# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**RONALD ASHFORD**                    *CIVIL NO. 07-0650

**VERSUS**                            *MAGISTRATE JUDGE HILL

**CITY OF LAFAYETTE, ET AL.**         *BY CONSENT OF THE PARTIES

## REASONS FOR JUDGMENT

Pending before the court is the Motion for Summary Judgment filed by defendants Lafayette City Police Corporals William White ("White"), Jackie Hagan ("Hagan") and Heather Martin ("Martin"), Lafayette City Police Lieutenant Ron Czajkowski ("Czajkowski") and the Lafayette City-Parish Consolidated Government ("Lafayette"). [rec. doc. 31]. Plaintiff, Ronald A. Ashford ("Ashford"), has filed opposition [rec. doc. 34]. Oral argument on the Motion was held on November 19, 2008 and the matter was taken under advisement.

Ashford filed this civil rights action on April 11, 2007. In his Complaint, Ashford asserts that his civil rights were violated when he was unlawfully arrested with the use of excessive force on August 8, 2006. Ashford's claims are asserted under 42 U.S.C. §1983 and Louisiana state law.

By the instant Motion, the non-municipal defendants, White, Hagan, Martin and Czajkowski, contend that they are each entitled to qualified immunity, and that, therefore, Ashford's federal claims against them should be dismissed. More specifically, the defendants contend that Ashford cannot demonstrate that the officers violated his statutory or constitutional rights because the officers had probable cause to arrest Ashford. Additionally,

the defendants each assert that they cannot be held liable for the alleged use of excessive force because the force used on Ashford was objectively reasonable under the circumstances and because Ashford is unable to sustain his burden of demonstrating that his injury was "more than *de minimis*" when evaluated in the context in which the force was deployed. Finally, the defendants each assert that all of their actions were objectively reasonable under the circumstances and, therefore, even if Ashford has demonstrated a violation of his statutory or constitutional rights, they are nevertheless qualifiedly immune from suit.

The municipal defendant, Lafayette City-Parish Consolidated Government, seeks summary judgement based on the plaintiff's failure to allege or demonstrate that his alleged constitutional deprivations were caused by an official policy, custom or procedure of the government.

## Factual Background

The record before this court demonstrates that on August 11, 2006, White was dispatched to Ashford's Avondale Drive residence in response to a complaint by a neighbor that Ashford was photographing neighborhood children. Ashford explained to White that he was photographing the skateboarding apparatuses the children were allegedly leaving in the street. Additionally, Ashford told White that he believed the officer should stop the children's skateboarding activity. It appeared to White that Ashford was under the influence of intoxicating substances. Ashford admitted in his deposition that he "probably had two glasses" of wine. White told Ashford to stay away from the children and he left the scene.

On August 12, 2006, at approximately 6:30 p.m., Ashford called the police complaining about the neighborhood skateboarders.  Although Ashford believed the responding officer was male, the police reports indicate that Martin (a female officer) responded to the call.  Upon her arrival, Martin told Ashford that there were no skateboarders in the street, and Ashford offered no further details to support a violation of any law.  Accordingly, Martin told Ashford that there was nothing she could do. Ashford admitted in his deposition that he had consumed at least one beer; Martin believed Ashford to be intoxicated given his slurred speech, unsteady gait, and smell of alcohol.  Martin said that Ashford shouted at her and accused her of not doing her job. Martin told Ashford to return to his home and she left the neighborhood.

Shortly thereafter, at 6:53 p.m., the police records indicate that White was again dispatched to Ashford's neighborhood regarding a dispute about skateboarding by neighborhood children.  Ashford, who testified in his deposition that he had some wine to drink, appeared to White to be intoxicated, and allegedly shouted at White.  Ashford was neither detained nor arrested, and White left the scene.  According to Ashford, it was Martin, not White, who responded to this call.

Thereafter, at 9:38 p.m., White, Martin and Hagan responded to a 911 call reporting that an intoxicated male individual was staggering in the roadway in the 100 block of Avondale Drive.  Based on the officers' previous recollection of Ashford appearing intoxicated and the 911complainant's statement that officers had previously been to the suspect's house several times, the officers went to Ashford's home to investigate.  Ashford allegedly began to yell and

complain to neighbors that the police were harassing him. The officers called for a supervisor, Czajkowski. Upon Czajkowski's arrival, Ashford, who, in the meantime, had allegedly walked across the street to a neighbor's home, was instructed to return to his home. In his deposition, Ashford did not mention this incident. Ashford denied that he could not remember the incident. Instead, he asserted that he specifically remembered what had happened that night.

After the officers departed, Ashford went to the home of Dennie and Colleen Edwards, neighbors. Ashford admitted that he went to the Edwards' home, knocked on the door and asked Colleen Edwards for information about the whereabouts of a man he believed to be her father and also to "maybe talk about the skateboarders." Ashford testified in his deposition that "for some reason, neither one of us could understand what the other was trying to get across." Then, according to Ashford, Dennie Edwards came to the door hollering and told Ashford to go home, at which point Ashford left. According to the statements that Edwards gave to police, Ashford, who "it was obvious . . . was highly intoxicated", approached Dennie Edwards in his driveway and an argument ensued. Dennie Edwards asked Ashford to leave his property about five times. Upon seeing this argument between her husband and Ashford, and having seen police cars leaving the area and having been told by a neighbor that "one of our neighbors was drunk and in people's yards", Colleen Edwards entered her home and called 911 at 10:15 p.m.

All four officers were again dispatched to Avondale Drive in response to Colleen Edwards' 911 call reporting a "disturbance in progress." Upon their arrival, the officers made contact with the Edwards who reported that Ashford had entered their property, while highly

4

intoxicated, complaining that the police were harassing him and challenging Dennie Edwards to a physical altercation. Edwards also reported that he had asked Ashford to leave his property about five times, but that Ashford refused.

Based on this information, and their previous contacts with Ashford, Hagan, Martin and Czajkowski then went to Ashford's home to place him under arrest, while White remained with the Edwards family to take their written statements. Ashford met the officers in his carport. According to the officers, when they attempted to handcuff Ashford, he resisted, and fell to the ground. Then, when the officers attempted to place Ashford in the backseat of Martin's patrol vehicle, Ashford again resisted. Accordingly, Hagan delivered a knee strike to Ashford's thigh; when this was unsuccessful, two more strikes were delivered. Thereafter, Ashford was moved to White's patrol vehicle for transport to the Lafayette Parish Correctional Center for booking.

Ashford, on the other hand, stated in his deposition that all four of the officers went to his home and that they grabbed, punched, kicked and kneed him, slammed him to the ground, and then White, who according to the officers was not at the scene of the arrest, pulled him up to his feet after handcuffing him. Ashford admits in his deposition that at the time he was "in this catatonic drug state" apparently induced by the combination of alcohol and prescription medications.

As a result of his arrest, Ashford complains of shoulder and knee pain, for which he sought no immediate treatment, instead opting to treat himself. Indeed, following the incident,

Ashford admits that he continued to play tennis, until he tore his ACL. Ashford testified in his deposition that he probably had blood around his mouth and that he remembered tasting blood because he thought his lip had been cut; he also testified that he was limping. However, the jail records indicate no visible signs that medical attention was needed or that the medical unit be notified. The jail records also reflect that Ashford had no obvious bleeding, injuries, or pain. Ashford testified that he later noticed bruising, photographs of which are attached to his opposition memorandum. These photographs show a minor scrape on Ashford's ankle, and a bruise and scrape on his knee.

Ashford was transported to the Lafayette Parish Correctional Center where he was booked on charges of disturbing the peace by intoxication and entering/remaining after being forbidden. He bonded out the next day. The records of the jail indicate that Ashford appeared to be under the influence of alcohol at the time he was booked.

Ashford admitted in his deposition that, on the evening of his arrest, he drank wine and took two prescription medications which apparently were not meant to be taken in combination with alcohol. Indeed, Ashford testified in his deposition that this combination had previously resulted in blackouts and had caused him to lose track of time and a sense of where he was. Specifically, Ashford testified that he had previously found himself on his kitchen floor, had awakened on the side of a coulee next to his house and had left restaurants without paying the bill. Ashford further admitted that he had no recollection of his encounter with the Edwards family, learning of the events after the fact, during a discussion with a neighbor.

On January 24, 2007, in Lafayette City Court, Ashford pled "no contest" to remaining

after being forbidden. Ashford was sentenced to pay a fine and court costs totaling $130.00,

ten days incarceration (which was suspended during good behavior) and was placed on six

months unsupervised probation. The remaining charge of disturbing the peace was *nolle*

*prossed* by the prosecutor after Ashford explained that he was under the influence of his

prescription medications.

## Standard on Motion for Summary Judgment

Rule 56(c), Fed.R.Civ.Proc., provides that summary judgment "should be rendered if the

pleadings, the discovery and disclosure materials on file and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

of law."

Rule 56(e), Fed.R.Civ.Proc., provides, in pertinent part, as follows:

When a motion for summary judgment is properly made and supported, an opposing
party may not rely merely on allegations or denials in its own pleading; rather, its
response must--by affidavits or as otherwise provided in this rule--set out specific facts
showing a genuine issue for trial. If the opposing party does not so respond, summary
judgment should, if appropriate, be entered against that party.

Here, the defendants' Motion for Summary Judgment is properly made and supported.

Thus, Ashford may not rest upon his allegations or denials in his pleadings, but rather must go

beyond the pleadings and designate specific facts demonstrating that there is a genuine issue

for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

Ashford has submitted evidence in opposition to the instant Motion. However, Ashford's evidence fails to demonstrate that there is a genuine issue of material fact for trial. Accordingly, summary judgment with respect to Ashford's federal claims asserted against Corporals White, Hagan and Martin, Sergeant Czajkowski and the Lafayette City-Parish Consolidated Government is appropriate in this case, and will be granted, for the following reasons.

## LAW AND ANALYSIS

### I. Qualified Immunity/Federal Law Claims

Government officials are entitled to qualified immunity from civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, qualified immunity is available when a reasonable official would not have known that his actions would violate a constitutional right

that was clearly established at the time of the incident. *Harlow*, 102 S.Ct. at 2738. Qualified immunity is not merely a defense to liability, but is immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Claims of qualified immunity require a two-step analysis. First, the court must determine whether the plaintiff has alleged that "the officer's conduct violated a constitutional right." *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003); *Hall v. Thomas*, 190 F.3d 693, 696 (1999) *citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). If there is no constitutional violation, the court's inquiry ends. *Mace,* 333 F.3d at 623. On Motion for Summary Judgment, this determination is not limited to the pleadings alone. Rather, the court must consider the pleadings as well as the summary judgment evidence. *Mace,* 333 F.3d at 624 fn. 7.

If the plaintiff properly pleads (and supports at the summary judgment phase) that he has sustained the deprivation of a constitutional right, the court must then decide whether the defendant's conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation. *Hall,* 190 F.3d at 696 *citing Siegert*, 500 U.S. at 231-232. This "second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident*;* and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Estate of Sorrells v. City of Dallas,* 45 Fed.Appx.

325 (5th Cir. 2002) *quoting Hare v. City of Corinth, Miss.,* 135 F.3d 320, 326 (5th Cir.1998).

The analysis "generally turns on the 'objective legal reasonableness' of the action . . . assessed

in light of the legal rules that were clearly established at the time [the action] was taken . . ." in

light of the information the officers possessed.  *Anderson*, 483 U.S. at 639-640; *Wagner v. Bay*

*City, Texas*, 227 F.3d 316, 321 (5th Cir. 2000) *citing Anderson*, 483 U.S. at 640.

Thus, even if it is determined that the official's conduct was unconstitutional, that is, that

the defendant violated the plaintiff's clearly established constitutional rights, the court must

nevertheless decide whether the conduct was "objectively reasonable" and, if so, the defendant

may still be entitled to qualified immunity.  *Kipps v. Callier,* 197 F.3d 765, 768-69 (5th Cir.

1999) (citations omitted).  "Qualified immunity thus protects an official whose conduct was

objectively reasonable, even if the conduct infringed upon a constitutional right of the

plaintiff." *Wagner*, 227 F.3d at 321 *quoting Gutierrez v. City of San Antonio,* 139 F.3d 441, 445

(5th Cir.1998) *citing Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

"The qualified immunity standard gives ample room for mistaken judgments . . ."

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Thus, if officers of reasonable competence could

disagree . . . immunity should be recognized."  *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

## A. False Arrest/Unreasonable Seizure

Ashford has a Fourth Amendment right to be free from illegal arrest[1]; however, whether an arrest is illegal hinges on the existence of probable cause. Thus, if Ashford cannot show an absence of probable cause, he fails to state a violation of this constitutional right. *Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir. 1998) *citing Baker v. McCollan*, 443 U.S. 137, 144-45, 99 S.Ct. 2689, 2694-95, 61 L.Ed.2d 433 (1979). Probable cause is an absolute defense to a false arrest claim; thus, to prevail, the plaintiff must show the arresting officers did not have probable cause to arrest him. *Haggarty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004). Moreover, the "constitutional torts" of unreasonable seizure and false imprisonment also require a showing of no probable cause. *Brown v. Lyford,* 2001WL 170649, *3 (5th Cir. 2001) *citing Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000).

Probable cause exists when the totality of the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify an officer of average caution in the belief that the person to be arrested has committed or is committing an offense. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983); *Haggerty,* 391 F.3d at 656; *Spiller v. City of Texas City*, 130 F.3d 162, 165 (5th Cir. 1997).

---

[1] Because plaintiff complains of events which occurred during his arrest, when he was neither incarcerated, in custody awaiting trial, nor convicted, he enjoys the protections of the Fourth Amendment; the Eighth and Fourteenth Amendments are inapplicable. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) *citing Graham v. Connor*, 490 U.S. 386, 395 (1989), *Brothers v. Klevenhagen*, 28 F.3d 452, 455-56 (5th Cir. 1994) and *Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir. 1993); *Morin v. Caine*, 77 F.3d 116, 120 (5th Cir. 1996) *citing Ingraham v. Wright*, 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 1412, n. 40, 51 L.Ed.2d 711 (1977) and *Bell v. Wolfish,* 441 U.S. 520, 535, n. 16,99 S.Ct. 1861, 1872, n. 16, 60 L.Ed.2d 447 (1979); *Breaux v. Brown*, 2006 WL 3760242, *1 (W.D.La. 2006).

In the instant suit, the record establishes that Ashford went to the Edwards' home, while under the influence of prescription medications in combination with alcohol. The summary judgment evidence also clearly establishes that in response to this intrusion, Colleen Edwards called for emergency police assistance, and that Dennie Edwards advised the officers orally, and in his written statement, that Ashford refused to leave his property despite his repeated requests to do so. Accordingly, Ashford was arrested for entering/remaining after being forbidden, a charge for which Ashford was subsequently convicted after entering a "no contest" plea.

Under Louisiana law, no unauthorized person is permitted to remain on property which belongs to another after having been forbidden to do so either orally or in writing. La. R.S. 14:63.3. Obviously, the arresting officers had probable cause to arrest Ashford on this charge; it is beyond dispute that the officers had reasonable and trustworthy information sufficient to justify their belief that Ashford had committed this offense. Moreover, plaintiff fails to submit any competent evidence demonstrating that probable cause on this charge was absent. Accordingly, plaintiff has no claim for false arrest and summary judgment is properly granted with respect to this claim.[2]

Additionally, to the extent that plaintiff contends that he was unreasonably seized/arrested for a misdemeanor violation without a warrant, summary judgment is proper

---

[2]The court also notes that under Louisiana law, after conviction, the defendant can no longer allege lack of probable cause for his arrest; civil damages for false arrest may only be awarded in cases where the plaintiff has not been convicted of the crime with which he was charged. *Gibson v. State*, 758 So.2d 782, 791 (La. 2000).

with respect to this claim as well.[3]  The United States Supreme Court has held that the Fourth Amendment does not forbid a warrantless arrest for a misdemeanor criminal offense, including misdemeanor offenses which do not involve a breach of the peace. *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536 (2001).  Likewise, Louisiana law permits a warrantless arrest on misdemeanor charges in instances where the officer has "reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer."  La. C.Cr.P. art. 213(3); *State v. Toney*, 687 So.2d 1048, 1049 (La. App. 4th Cir. 1996) *citing* Official Revision Comment to art. 213 paragraph (a)(1) (stating "By use of the term 'offense' in Clause (3), the authority of a peace officer to make arrests for crimes committed out of his presence is broadened to include arrests for misdemeanors as well as for felonies."); *State v. Brown*, 464 So.2d 861 (La. App. 5th Cir. 1985); *See also* La.,C.Cr.P. art. 211 (providing police officers with discretion to either arrest or issue a summons on a misdemeanor violation). In light of the above analysis, the officers clearly had probable cause to arrest Ashford for entering/remaining after being forbidden, and, under these circumstances, clearly had lawful authority to arrest him on this misdemeanor charge without a warrant.

Finally, to the extent that Ashford claims that his warrantless arrest was unreasonable because the arrest was effected in his home in the absence of exigent circumstances, summary judgement is properly granted.  The undisputed evidence before this court establishes that Ashford was arrested in his carport, outside of his house, in an area which is open to public

---

[3]The instant analysis focuses on the plaintiff's seizure in connection with  his arrest.  Plaintiff's claim for use of excessive force is addressed below.

view and accessible from the street. Arrests in similar locations have not been considered

"inside" the home for Fourth Amendment purposes, nor do such places afford an expectation of

privacy sufficient to trigger the protections of the Fourth Amendment. *Kirkpatrick v. Butler*,

870 F.2d 276, 280 (5th Cir. 1989) (holding that a warrantless arrest on one's front porch is

constitutionally permissible); *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 49

L.Ed.2d 300 (1976) (warrantless arrest in the doorway of the suspect's home did not violate the

Fourth Amendment as there is no expectation of privacy when one is exposed to public view);

*United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir.1987) (warrantless arrest in the

doorway to ones' hotel room constitutionally permissible); *United States v. Mason*, 661 F.2d

45, 47 (5th Cir.1981) (warrantless arrest at the door of the suspect's home consistent with the

Fourth Amendment).

Since no constitutional violation occurred as a result of Ashford's arrest and seizure,

this ends the court's inquiry and the remaining steps in the qualified immunity analysis need

not be reached. *.Mace,* 333 F.3d at 623.[4]

---

[4]Even if this court were to find that Ashford had been arrested in the absence of probable cause, summary judgment on the basis of qualified immunity would nevertheless still be granted. Law enforcement officers who reasonably, but mistakenly, conclude that probable cause is present are entitled to qualified immunity. *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (5th Cir. 2004) *citing Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) and *Anderson*, 107 S.Ct. at 3039-3040; *Hunter v. Bryant*, 502 U.S. 224, 227-229 (1991). Thus, when "arguable" probable cause is present, qualified immunity is not defeated. *Id. citing Brown v. Lyford,* 243 F.3d 185, 190 (5th Cir. 2001). At a minimum, the defendant officers had at least arguable probable cause to arrest Ashford. Moreover, under the totality of the circumstances, any mistake on the officers' part as to whether probable cause was present was reasonable.

## B. Excessive Force

Ashford also claims that the defendant officers subjected him to excessive force during his arrest by allegedly punching, kicking and kneeing him while forcing him to the ground, handcuffing him and pulling him to his feet by his handcuffed arms.

This court's analysis begins with a determination of whether the officers violated Ashford's constitutional right to be free from excessive force. *Mace,* 333 F.3d at 624. Because plaintiff complains of events which occurred during an arrest, the analysis is made under the Fourth Amendment as opposed to the Eighth or Fourteenth Amendments. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 and 452 (5th Cir. 1998) *citing Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989); *Morin v. Caine*, 77 F.3d 116, 120 (5th Cir. 1996); *Breaux v. Brown*, 2006 WL 3760242, *1 (W.D. La. 2006) ("The protections of the Eighth Amendment apply only to convicted prisoners and do not apply to a 'free' citizen such as plaintiff). As in other Fourth Amendment contexts, the "reasonableness" inquiry, in an excessive force case, is an objective one, that is, the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them. *Graham*, 109 S.Ct. at 1872. The force must be objectively reasonable under the totality of the circumstances. *Graham,* 490 U.S. at 397.

Reasonableness is judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. *Id*., 490 U.S. at 396. The question is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them

without regard to their underlying intent or motivation . . . ." *Id.*, 490 U.S. at 397. Factors to consider when determining whether the force used was objectively reasonable include the severity of the crime at issue, whether the suspect posed a threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to avoid arrest. *Id.*, 490 U.S. at 396. *Graham* instructs courts not to engage in second-guessing officers about the amount of force that is necessary in a particular situation, recognizing that officers have to make split second, on the scene, decisions about the amount of force that is necessary in a particular situation in circumstances that are tense, uncertain and rapidly evolving. *Id.,* 490 U.S. at 396-397*; Tanner v. Harris,* 31 Fed.Appx. 154 (5th Cir. 2001) *citing Graham,* 490 U.S. at 396-97; *Wagner v. Bay City Texas*, 227 F.3d 316, 321 (5th Cir. 2000) *citing Graham,* 490 U.S. at 396-97.

In this case, the initial question in this court's analysis is to determine whether the officers' use of force was objectively unreasonable. If the force used by the officers was objectively reasonable, no Fourth Amendment violation occurred. In applying the Fourth Amendment's objective reasonableness standard, this court must determine the reasonableness of the officer's use of force in the light of the facts and circumstances confronting the officers at the time they acted, without regard to their underlying intent or motivation, viewing the facts in the light most favorable to Ashford as is required at the summary judgment stage. *Mace*, 333 F.3d at 624-625 *citing Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

In making this determination, this court must be mindful that police officers are "forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97, 109 S.Ct. 1865. This standard gives ample room for mistaken judgments by protecting all but the plainly incompetent, or those who knowingly violate the law. *Tanner,* 31 Fed. Appx. 154 (5th Cir. 2001) *citing Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534 (1991).

An excessive use of force claim requires a plaintiff to prove (1) an injury, (2) which resulted directly and solely from the use of force that was clearly excessive to the need and (3) the excessiveness of the force used was objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433-434 (5th Cir, 1996); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) *citing Goodson*, 202 F.3d at 740 *quoting Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999). In gauging the objective reasonableness of the force, a court must balance "the amount of force used against the need for that force." *Ikerd*, 101 F.3d at 434.

Under the first inquiry, although a showing of "significant injury" is no longer required in the context of an excessive force claim, the Fifth Circuit does require a plaintiff asserting an excessive force claim to show that he sustained an injury which is "more than a *de minimis* injury" evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314 *citing Williams,* 180 F.3d at 703 *quoting Jackson v. R.E. Culbertson,* 984 F.2d 699, 700 (5th Cir.1993); *See also Gomez v. Chandler,* 163 F.3d 921, 924 (5th Cir. 1999)*; Siglar v.*

*Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). Thus, the Fifth Circuit has shaped the analysis so that courts "do not permit a cause of action for every contact between a citizen and a police officer." *Williams,* 180 F.3d at 703.

While Ashford has testified that the officers grabbed, punched, kicked and kneed him, slammed him to the ground, and then pulled him up to his feet after handcuffing him, Ashford also candidly admitted that at the time of his arrest he was "in this catatonic state" induced by his having combined his prescription drugs with alcohol, and, hence, that he was "not thinking very well" and "not clear." On the other hand, the officers consistently testified that Ashford was resisting his arrest and his transport to the Lafayette Parish Correctional Center. This court need not resolve these seemingly contradictory positions, however, because Ashford has failed to establish that the events at issue rise to the level of a constitutional violation.

The record before this court establishes that Ashford's injuries amounted to no more than scrapes and bruises, which may not have resulted from the arresting officers' alleged actions. The photographs offered by Ashford show only minor scrapes and bruises. Moreover, Ashford sought no immediate medical treatment for his alleged shoulder or knee pain, instead opting to treat himself. Indeed, following the incident, Ashford admits that he continued to play tennis, until he tore his ACL.

Nor did Ashford definitively testify in his deposition that he had cut his lip; the jail booking photograph fails to substantiate this claim. Although Ashford testified that he was limping, Ashford readily admitted that he had a pre-existing knee injury. Finally, the jail

records indicate no visible signs that medical attention was needed or that the medical unit be notified; Ashford had no obvious bleeding, injuries, or pain.  Therefore, based on the record before this court, the undersigned cannot find that Ashford sustained an injury which is "more than *de minimis*." In this case, Ashford has not established the first prong of an excessive use of force claim.

Ashford has also failed to present a material issue of fact establishing that the force used herein was clearly excessive to the need, or that the force used was objectively unreasonable under the circumstances.  To the contrary, examination of the record and the evidence submitted in support of, and opposition to, summary judgment herein, reveals that under the totality of the circumstances, the force used by the officers was not objectively unreasonable or excessive to the need.

Although it is disputed whether Ashford was actively resisting or attempting to flee, it is undisputed that, at the time the force was employed, the officers had justifiable reason to believe that they were dealing with a highly intoxicated individual, who had reportedly exhibited threatening behavior to his neighbors, and who had not previously obeyed the officers' verbal commands or warnings.  The record establishes that the officers had been repeatedly called to the Avondale neighborhood as a direct result of Ashford's seemingly intoxicated behavior.  Indeed, by the accounts of all of the officers, the Edwards and the emergency call complainants/neighbors,  Ashford was exhibiting irrational, intoxicated and

threatening behavior which had not been stopped by the officers' prior verbal commands and warnings.

Moreover, the jail records indicate that Ashford appeared to be intoxicated. Indeed, although Ashford himself refused to concede that the officers reasonably believed him to be intoxicated, he nevertheless admitted, at various points in his deposition, that he may have smelled like alcohol, and that in the past the combination of his medication and alcohol had resulted in his inability to control his physical actions, and to act in accordance with established societal rules and norms. Under these circumstances, it was not unreasonable for the officers to have forcibly subdued Ashford, or to have pushed Ashford to the ground (as Ashford claims), handcuffed him, or pulled him to his feet, as that amount of force was not excessive to the need of the officers under the totality of the circumstances perceived the officers.

Indeed, the United States Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary . . ." violates the Fourth Amendment. *Graham,* 490 U.S. at 396. In retrospect, while there may have been alternate courses of action which the officers may have taken, this court cannot judge the officers' use of the force which they employed by "20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Mace*, 333 F.3d at 625.

In sum, balancing the amount of force used against the need for that force, in light of the facts and circumstances known and perceived by the officers at the time the force was employed, it is clear that the force used by the officers was not excessive to the need, nor was it objectively unreasonable. The officers did not violate Ashford's Fourth Amendment right to be free from excessive force. Since Ashford has failed to establish a constitutional violation, this

court's inquiry ends.  *Mace,* 333 F.3d at 623.[5]  Summary Judgement is properly granted on

Ashford's use of excessive force claim.

## II. *Monell*/Official Capacity Claim

Local governmental entities may be sued under §1983; however, they may not be held

vicariously liable under the doctrine of *respondeat superior.*  *Monell v. Department of Social

Services*, 436 U.S. 658 (1978).  Rather, such a claim requires *Monell* proof of an official

policy[6] or custom[7] as the cause of the constitutional deprivation.  *Turner v. Houma Municipal

Fire & Police Civil Service Board*, 229 F.3d 478, 483 fn 10 (5th Cir. 2000) *citing Monell v.*

---

[5]Because this court finds no constitutional violation, this court need not address the second prong of the qualified immunity analysis.  The court notes, however, that a determination that the force used by the officers was excessive, and thus violated Ashford's constitutional rights, would not end the qualified immunity inquiry. The Supreme Court has expressly held that the qualified immunity reasonableness inquiry is separate from the Fourth Amendment's objective reasonableness inquiry in excessive force cases. *Mace*, 333 F.3d at 625 fn. 10 *citing Saucier,* 533 U.S. at 197, 121 S.Ct. 2151. The second prong of the inquiry would require this court to determine whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id. quoting Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.  The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  *Id.*  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  *Id.* Qualified immunity operates in this case, then, just as it does in others, to protect officers from the sometimes "hazy border between excessive and acceptable force." *Id. quoting Saucier,* 533 U.S. at 205-06, 121 S.Ct. 2151 (citations omitted).  The officer's use of force in this case was not unreasonable under this standard.

[6]"An official policy, for purposes of §1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) *quoting  Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc).

[7] Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Campbell*, 43 F.3d at 977 *citing Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990) (en banc). As discussed above, there is no allegations or evidence of any persistent, widespread practice for purposes of  liability or precluding summary judgment herein.  The singular incident described herein is insufficient. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) *citing  Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir.1998) and  *Belt*, 828 F.2d at 304-305; *Board of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

*Department of Social Services*, 436 U.S. 658 (1978); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).[8]

In his original complaint, Ashford does not allege any official policy or custom of the Lafayette City Parish Consolidated Government to support liability. Moreover, in opposition to Lafayette's Motion for Summary Judgment, Ashford has failed to present any competent evidence to this court that any such official policy or custom was the cause of his alleged constitutional deprivation. Accordingly, Ashford has failed to demonstrate a disputed material issue of fact which precludes summary judgment herein with respect to his claim asserted against the Lafayette City Parish Consolidated Government. Summary Judgment is therefore properly granted on this claim.

Moreover, to the extent plaintiff asserts any official capacity claim against any of the defendant officers or Lafayette, when there is no underlying individual constitutional violation for which the municipal defendant can be held derivatively liable on the basis of its policies or customs, there can be no liability against the municipality or its employees in their official capacities. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished); *Breaux v. Brown,* 2006 WL 3760242, *2 (W.D.La. 2006).

_____

[8]In *Monell,* the Court held that local governmental entities may be sued under §1983. However, they may not be held vicariously liable under the doctrine of *respondeat superior*. Thus, a governmental entity may not be held liable merely because it employs a tortfeasor. Liability must be based upon allegedly unconstitutional conduct which "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels." *Id*. at 690-91.

In this case, plaintiff has failed to set forth a viable constitutional claim against any of the defendant officers in their individual capacities. Thus, in the absence of any underlying constitutional violation, plaintiff cannot establish a claim against the Lafayette City-Parish Government or any of the named officers in their official capacity as such a suit is tantamount to a suit against their municipal employer.[9] *Id.* Accordingly, to the extent that plaintiff asserts any official capacity claim against the defendant officers or the Lafayette City-Parish Government, those claims are properly dismissed with prejudice.

## III. State Law Claims

In light of the above, all federal claims asserted against Corporals White, Hagan and Martin, Lieutenant Czajkowski and the Lafayette City-Parish Consolidated Government are dismissed. Accordingly, no federal question remains before this court.

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) *citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). However, the dismissal should be without prejudice. *Id.*

---

[9]An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Brandon v. Holt*, 469 U.S. 464 (1985); *Hafer v. Melo*, 112 S.Ct. 358 (1991); *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999).

Accordingly, the undersigned declines supplemental jurisdiction over the state law claims asserted by Ashford. Those claims shall be dismissed without prejudice.

Signed this 9th day of December, 2008 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE